IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Harrisonburg Division)

| | |
|---|---|
| In re: | ) |
| | ) |
| ARTISAN PACKAGING, LLC[1] | ) |
| | ) Case No. 23-50588 |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) |
| | ) |

### DECLARATION OF MARK HALL IN SUPPORT OF THE DEBTOR'S MOTION FOR AN ORDER AUTHORIZING THE DEBTOR TO OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364 AND FOR AN EXPEDITED HEARING

I, Mark Hall, hereby declare under penalty of perjury:

1.  I am the president and general manager of Artisan Packaging LLC, a limited liability company organized under the laws of the Commonwealth of Virginia and the debtor and debtor-in-possession (the "Debtor") in the above-captioned case under Subchapter V of Chapter 11, Title 11 of the United States Code (11 U.S.C. §§ 101-1532, the "Bankruptcy Code"). I am generally familiar with the day-to-day operations, business, and financial affairs and books and records of the Debtor.

2.  I submit this Declaration in support of the "Debtor's Motion for an Order Authorizing the Debtor to Obtain Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364 and for an Expedited Hearing" (ECF No. 61, the "Motion")[2].

---

[1] The Debtor's principal office address is 291 W. Wolfe Street, Harrisonburg, Virginia 22801 and last four digits of its tax identification number are 2655.
[2] Unless otherwise defined herein, the capitalized terms used in this Declaration have the meanings ascribed to them in the Motion.

1

3. I have reviewed the Motion and the exhibits attached thereto, including the proposed "Interim Order" attached thereto as Exhibit "A", (the "Interim Order"). The factual statements made in the Motion, and those in the Interim Order, including the "Stipulations" and "Warranties" entered into and made by the Debtor, are true and accurate to the best of my information and belief.

4. I personally was involved with the assessment of the Debtor's need for, and decision to pursue, post-petition financing (the "DIP Financing"). I also was personally involved in identifying and contacting potential sources of DIP Financing and the decision to seek such financing from Farmers and Merchants Bank (the "Bank").

5. Prior to the Petition Date, the Debtor ceased manufacturing operations, and therefore ceased generating new accounts receivable which were the Debtor's primary source of revenue. Subsequent to the Petition Date and during the course of these proceedings, the Debtor, in consultation with the Bank, has determined to liquidate its assets and focus its efforts on consummating a "turnkey" (in place,) sale and or other sales, including conducting an auction.

6. The Debtor has an immediate need to obtain DIP Financing in order to maintain its assets, which consist primarily of hundreds of pieces of operating equipment, to best position them for sale to maximize recoveries and otherwise provide for an orderly liquidation process. Without access by the Debtor to the DIP Financing offered under the DIP Facility, its sale and wind up operations will cease, subjecting the value of the Debtor's assets to decrease precipitously.

7. The Debtor is unable to obtain sufficient financing on more favorable terms from sources other than the Bank and is unable to obtain unsecured credit on any terms. In addition to the Bank, the Debtor contacted at least four other prospective lenders, none of which were willing to lend on an unsecured basis (and some were unwilling to lend to the Debtor at all), and none

were willing to do so without the super priority administrative expenses and priming liens set forth in the DIP Facility. Moreover, the interest rate and fees proposed by the prospective lenders were no more favorable, and in several respects, exceeded, those being requested by the Bank in the DIP Facility.

8. Last, and equally as important as the terms of the DIP Facility, the Debtor had determined that the Bank, given its existing relationship and prior knowledge of the Debtor's asset base, was in the best position to move quickly to put the DIP Facility in place on a timeline to maximize the Debtor's sale efforts. The prompt placement of the DIP Facility will minimize disruption of the Debtor's efforts to conduct a successful sale, allowing it to meet payroll and other critical expenses necessary to maintain the asset base. As the Debtor is essentially out of cash, immediate access to the Interim Funding is vital to avoid the complete shutdown of the Debtor's wind down efforts.

9. An important component of the DIP Facility and the Interim Funding is the availability of a $30,000 letter of credit to be posted as adequate assurance of future payment for the Debtor's utility obligations owed to Harrisonburg Electric Commission. The Debtor does not have available funds to provide the required deposit, and the use of a letter of credit preserves the Debtor's ability to request the full $600,000 in additional funding which is proposed under the DIP Facility.

10. The DIP Facility has been negotiated in good faith and at arms length between the Debtor and the Bank. Over the course of the negotiations, the original proposed "term sheet" for the DIP Facility went through several rounds of modification, with compromises and concessions being made by both parties at each step. Input on the proposed terms was received from both the Sub Chapter V Trustee and the Office of the United States Trustee (the "UST"), with that input

being accommodated and incorporated into the DIP Facility for which the Motion seeks approval. I understand that both the Sub V Trustee and the UST do not object to approval of the DIP Facility.

11. For all these reasons, I believe:

    (a) the terms of the proposed DIP Facility are the most advantageous available to the Debtor and will provide the liquidity necessary to seek the optimum value for its assets;

    (b) the DIP Facility is fair and reasonable given the circumstances; and

    (c) entry into the DIP Facility is in the best interest of the Debtor and its estate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief,

Executed on February 5, 2024

                                                                               Mark Hall, President and
General Manager
Artisan Packaging, LLC

24002034